UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     *Plaintiff*,

 -against-

THE REAL PROPERTY AND PREMISES LOCATED AT 26421 RIVERROCK WAY, SANTA CLARITA, CALIFORNIA 91350-3995, AND ALL PROCEEDS TRACEABLE THERETO; *et al.*,

     *Defendants In Rem.*

15-CV-6762 (ARR) (RML)

**OPINION & ORDER**

ROSS, United States District Judge:

 Sam Ostayan filed a late claim in this *in rem* forfeiture action seeking restitution of a defendant condominium, which Mr. Ostayan purchased at a nonjudicial foreclosure sale more than four years after this action was initiated. Before me is Mr. Ostayan's motion to expunge the government's notice of pendency that was recorded on the state property record, as well as the government's motion to strike Mr. Ostayan's claim as late-filed. *See* Ostayan Mem. L. Supp. Mot. Expunge *Lis Pendens*, ECF No. 135 ("Ostayan Mot."); Gov't Mem. L. Opp'n Mot. Expunge & Mot. Strike Claim, ECF No. 136-1 ("Gov't Mot."); Ostayan Reply Supp. Mot. Expunge, ECF No. 137 ("Ostayan Reply"); Gov't Reply Supp. Mot. Strike, ECF No. 138 ("Gov't Reply"). For the following reasons, I strike Mr. Ostayan's claim and answer and deny the motion to expunge for lack of standing.

**BACKGROUND**

*Civil Forfeiture Action*

 In November 2015, the government initiated this *in rem* forfeiture action, pursuant to 18 U.S.C. § 981(a)(1), against assets allegedly derived from or traceable to an illegal sports gambling enterprise led by Cyrus Irani. Compl. ¶¶ 24–28, ECF No. 1. Among the

defendant assets listed in the complaint is a "condominium residence . . . located at 4257 East Ocean Boulevard [Unit #8], Long Beach, California, 90803-2996" (the "East Ocean Condo" or "the Condo"). Compl. ¶ 1(j). At the time the complaint was filed, the East Ocean Condo belonged to the gambling enterprise's bookmaker, David Chang, although the name of his brother, Fred Yoon Chang, appeared on the deed. *Id*. ¶¶ 105–116; *see* Lekakis Decl., Ex. B (2015 property deed). According to the government, the Condo was purchased with money provided by Cyrus Irani and put in Fred Chang's name to protect it from forfeiture "in the event that law enforcement agencies decided to pursue the assets or proceeds of [the] gambling business." Lekakis Decl., Ex. C ¶ 11 (declaration of Cyrus Irani.), ECF No. 136-5 ("Irani Decl."); Compl. ¶¶ 107–108.

On February 2, 2016, the government recorded a "notice of pendency," or *lis pendens*, on the East Ocean Condo with the Los Angeles County Recorder's Office. Lekakis Decl., Ex. G. The *lis pendens* states that:

> NOTICE IS HEREBY GIVEN that a civil case was commenced at the above-captioned matter which involves the real property and premises located and known as [the East Ocean Condo] . . . upon the filing of a Verified Complaint *In Rem* in the United States District Court for the Eastern District of New York on or about November 25, 2015 seeking forfeiture to the United States of the real property and premises described[].

*Id*. at 4. The *lis pendens* includes a detailed description of the East Ocean Condo and a copy of the complaint. *Id*. at 7, 61. The *lis pendens* did not, however, include any proof of service and it appears that the *lis pendens* was not, in fact, served on anyone. On February 25, 2016, the government filed an amended complaint adding additional defendant assents, including a firearm found inside the East Ocean Condo. First Am. Compl. ¶ 1(u) ("FAC"), ECF No. 3.

On March 18, 2016, the government served the FAC on all known potential claimants of the East Ocean Condo, including David Chang, Fred Yoon Chang, and Cyrus Irani, *see* Certificate Service at 1–2, 36–37, ECF No. 20, and published a notice of forfeiture on an official government internet site for thirty consecutive days, Lekakis Decl., Ex. I, ECF No. 136-11 (Decl. of Publication, also filed on docket as ECF No. 12); *see* Fed. R. Civ. P. Supp. Rule G(4) (notice and publication requirements for civil forfeiture actions). The government also posted a copy of the FAC on the East Ocean Condo itself. Lekakis Decl., Ex. H, ECF No. 136-10 (Form USM-285 process receipt).

Within thirty-five days of service of the FAC, David Chang and Cyrus Irani both filed verified claims for restitution and the right to defend the action as it concerned the East Ocean Condo. David Chang filed his claim on April 19, 2016, stating, *inter alia*, that he was the "owner-in-fact" of the East Ocean Condo. Chang Verified Claim ¶ 1(a), ECF No. 7. Cyrus Irani filed his claim on April 21, 2016, stating an interest in the Condo. Irani Verified Claim, ECF No. 10; *see also* Am. Verified Claim, ECF No. 14. On April 29, 2016, the court stayed the action as to both David Chang and Cyrus Irani, pending the disposition of a related criminal case filed in state court. *See* April 29, 2016 Order; Lekakis Decl., Ex. A (indictment in *People of the State of New York vs. Cyrus Irani, et. al*, (Indictment No. 2037/2015) (Queens County Sup. Ct.)). Fred Yoon Chang did not file a claim.

The stay of proceedings was lifted as to David Chang on June 8, 2018, *see* Status Report, ECF No. 66, and, in February 2019, he executed a stipulation of settlement with the government in which he disclaimed his interest in all defendant assets, including the East Ocean Condo. Lekakis Decl., Ex. L at 4, ECF No. 136-14 ("Chang Stipulation"). The stay was lifted as to Cyrus Irani on April 16, 2019. *See* Order, April 16, 2019. The

3

government states that it has also negotiated a settlement to resolve Cyrus Irani's outstanding claim in the East Ocean Condo, Gov't Mot. at 26, though it is unclear whether an agreement has been executed yet. Because Mr. Irani's claim is not yet resolved, the government has not yet moved for a decree of forfeiture as to the Condo.

***Status of East Ocean Condo***

There is little information in the record regarding the status of the East Ocean Condo from November 2015 to September 2021. Based on property records filed by Mr. Ostayan, it appears that the Condo fell into delinquency with the Belmont Shore Oceanaire Homeowner's Association ("the HOA") around July 2019, when late assessment fees began to accrue. *See* Req. Jud. Not., Ex. 3, ECF No. 135-13, (property recording for "Notice of Default and Election to Sell"); *see also* Ostayan Decl., Ex. 3, Ex. No. 135-9 (listing 2019 as first year of tax default). The HOA recorded an assessment lien with the Los Angeles County Recorder's Office on the Condo on April 8, 2021, and eventually initiated nonjudicial foreclosure proceedings to recover the unpaid assessments, pursuant to California Civil Code § 5700. *Id*. On August 20, 2021, the HOA recorded a notice that a foreclosure sale was scheduled. Req. Jud. Not., Ex. 4, ECF No. 135-14 (property recording for "Notice of Trustee's Sale"). It is unclear whether notice of the delinquency, lien, or foreclosure sale was provided to the government. The East Ocean Condo was sold to Sam Ostayan at a public auction on September 23, 2021. Req. Jud. Not., Ex. 5, ECF No. 135-15 (property recording for "Trustee's Deed Upon Sale). Mr. Ostayan purchased the property for $28,500—slightly more than the amount due to the HOA. *Id*. The ninety-day statutory redemption period expired on or around December 28, 2021. *See* Cal. Civ. Code § 5715. Mr. Ostayan recorded his deed on January 7, 2022. *Id*. In February 2022, Mr. Ostayan mailed a "notice to quit" to Fred Yoon Chang and any

4

other individuals who may have resided in the Condo and filed an "unlawful detainer" action, *see* Cal. Civ. Proc. Code § 1161a, seeking possession of the Condo. Req. Jud. Not., Ex. 6, ECF No. 135-16 (Complaint, *Sam Ostayan v. Fred Yoon Chang et al.*, No. 22LBCV00104 (Los Angeles Sup. Ct., filed March 7, 2022). On May 10, 2022, Mr. Ostayan obtained a default judgment in the unlawful detainer action. Req. Jud. Not., Ex. 7, ECF No. 135-17 (Default Judgment, *Ostayan v. Chang et al.*). On June 15, 2022, he obtained a writ of possession. Req. Jud. Not., Ex. 8, ECF No. 135-18.

It is unclear when Mr. Ostayan first learned about the pending forfeiture action, but he states in briefing that he was "prompted" to reach out to the government when he received a notice of tax delinquency from the Los Angeles County Treasurer on May 29, 2024. Ostayan Reply at 13; *see* Ostayan Decl., Ex. 3. Shortly thereafter, Mr. Ostayan's lawyer sent a letter to the government requesting that the government voluntarily release its *lis pendens* on the East Ocean Condo. Mace Decl. Ex. 1, ECF No. 135-4. Mr. Ostayan's attorneys first filed a notice of appearance in this action on September 24, 2024. *See* ECF Nos. 120 & 121. Mr. Ostayan filed an answer and verified claim for restitution on November 18, 2024. *See* Ostayan Answer, ECF No. 122; Ostayan Claim for Restitution & Right to Defend Action, ECF No. 123 ("Ostayan Claim"). In his claim, Mr. Ostayan states that he is an "innocent owner" under 18 U.S.C. § 983(d)(3) and "did not and was reasonably without cause to believe that the property was subject to forfeiture at the time of his purchase." *Id.* ¶ 7.

On April 2, 2025, Mr. Ostayan moved to expunge the government's *lis pendens* on the East Ocean Condo based on alleged deficiencies in service. The government opposes expungement and, separately, moves to strike Mr. Ostayan's claim as late filed. Gov't Mot. 8, 24.

5

**DISCUSSION**

I.  **Motion to Strike**

*In rem* forfeiture actions are governed Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, 114 Stat. 202. *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (per curiam). "The Federal Rules of Civil Procedure also apply to civil forfeitures except to the extent that they are inconsistent with the Supplemental Rules." *United States v. One Hundred Thirty-Eight Thousand, Three Hundred Eighty-One Dollars in U.S. Currency ($138,381.00), Seized on Oct. 24, 1996, at John F. Kennedy Int'l Airport from Jose M. Agudelo-Garcia*, 240 F. Supp. 2d 220, 227 (E.D.N.Y. 2003). To initiate an *in rem* forfeiture action, the government must file a complaint that, *inter alia*, identifies the defendant property, and states facts sufficient to support a "reasonable belief" that the property is subject to forfeiture. Supp. R. G(2); *see United States v. Approximately Five Hundred Forty-One Thousand Nine Hundred Fifty-Three Dollars & Zero Cents Seized From JP Morgan Chase NA Acct. No. XXXXXXXXX Held in Name of Jiawig Trade Inc.*, No. 23-CV-9585, 2025 WL 923412, at *5 (E.D.N.Y. Mar. 27, 2025). For civil forfeiture actions of real property, the government must also post a notice of the complaint on the property and serve notice to the property owner and other known potential claimants. *See* 18 U.S.C. § 985(c); Supp. R. G(4).

Supplemental Rule G(5) sets forth procedural requirements and deadlines for persons to "contest the forfeiture" by filing a verified claim and answer. Supp. R. G(5). Where, as here, notice of the action was published on an official internet government forfeiture site for thirty consecutive days, *see* Lekakis Decl. Ex. I at 12, the deadline for

6

filing a claim is: "no later than 30 days after final publication of newspaper notice or legal notice . . . or no later than 60 days after the first day of publication on an official internet government forfeiture site" unless "the court for good cause sets a different time." Supp. R. G(5)(a)(ii). If the claimant fails to comply with the procedural requirements of the Supplemental Rules, the government "may move to strike [the] claim." Supp. R. G(8)(c)(i)(A). While strict compliance with the Supplemental Rules is generally required, the trial court "has discretion in appropriate circumstances to depart from the strict compliance standard." *$138,381.00*, 240 F. Supp. 2d at 230; *see also United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17, 19–20 (2d Cir. 2017) (discussing factors that may inform district court's decision to permit late-filed claim).

At the outset, I note that the parties do not address the standard that governs Mr. Ostayan's ability to assert his late claim. Ordinarily, a motion to file a late claim against seized property is "governed by the 'excusable neglect' standard of [Fed. R. Civ. P.] 6." *United States v. Starling*, 76 F.4th 92, 100 (2d Cir. 2023). However, the Second Circuit has explained that "the text of Supplemental Rule G suggests that good cause is the appropriate standard" in certain circumstances, such as when "a claimant with Article III standing seeks to file an untimely claim against seized assets after default has been entered but before default judgment has been granted[.]" *Id.* at 100, 102. "The good cause standard considers three factors: (i) the willfulness of the defaulting party, (ii) prejudice to the non-movant, and (iii) whether the defaulting party has a meritorious defense." *Id.* at 102. I need not decide which standard applies, as Mr. Ostayan's claim fails even under the more permissive "good cause" standard.

This action has been pending for almost a decade and the statutory deadline for

7

filing a claim passed on May 17, 2016. *See* Lekakis Decl., Ex. I (listing first day of online notice of forfeiture as March 18, 2016); Supp. R. G(5)(a)(ii) ("[T]he claim must be filed . . . no later than 60 days after the first day of publication on an official internet government forfeiture site."). Mr. Ostayan filed his claim on November 18, 2024, more than eight years after that deadline, without seeking leave to file a late claim. Ostayan Claim, ECF No. 123. Much of that delay is explained by the fact that Mr. Ostayan acquired the property after the foreclosure sale on September 23, 2021, and therefore had no cognizable claim to the property prior to that date. Req. Jud. Not., Ex. 5, ECF No. 135-15.

Nonetheless, Mr. Ostayan has not provided a coherent (or indeed any) explanation for his failure to file a verified claim when he acquired the property in 2021. Under California law, individuals who purchase real estate are deemed to have notice of matters that would be located by a "diligent title search." *Dyer v. Martinez*, 147 Cal. App. 4th 1240, 1243 (2007). Purchasers are also deemed to have knowledge of facts when they "ha[ve] knowledge of circumstances which, upon reasonable inquiry, would lead to [those] particular fact[s]." *Vasquez v. LBS Fin. Credit Union*, 52 Cal. App. 5th 97, 108 (2020) (quotations and citation omitted). Mr. Ostayan purchased the property in 2021 for a tiny fraction of its assessed value. *See* Gov't Mot. at 24. Mr. Ostayan does not dispute that at the time of the purchase, a title search would have revealed the government's *lis pendens*, which was filed more than five years earlier and included a copy of the complaint. Gov't Reply at 6. Even assuming that Mr. Ostayan is correct that the lis pendens void as to the Condo's previous owners due to lack of service, *see* Cal. Civ. Proc. Code § 405.23, the above facts undoubtedly gave Mr. Ostayan cause to know about this pending forfeiture action. Without an alternative explanation, I can only infer that Mr. Ostayan elected to "remain[] on the sidelines" for tactical reasons. *See In re 650 Fifth Ave. & Related Props.*,

8

No. 08-CIV-10934 (KBF), 2017 WL 3834795, at *2 (S.D.N.Y. Sept. 1, 2017), *aff'd sub nom. Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019) ("The [claimants] have offered no compelling reason to excuse their five-year delay.").

Although Mr. Ostayan suggests that I calculate the deadline for filing a claim from June 4, 2024, when he first contacted the government about the *lis pendens*, Ostayan Reply at 13, Mr. Ostayan pointedly does not aver that June 4, 2024 is the first day that he learned about the pending forfeiture action. *See* Ostayan Decl. Indeed, Mr. Ostayan's own submissions strongly suggest that he has been aware of forfeiture action for some time. In his reply brief, Mr. Ostayan explains that his first contact with the government "was prompted by Ostayan's receipt of a notice of tax sale [sent by the County of Los Angeles] on May 29, 2024." Ostayan Reply at 13. Mr. Ostayan avers that he "ha[s] not paid the overdue property taxes . . . due to the pending forfeiture action." Ostayan Decl. ¶ 11. Critically, three of the five years in which unpaid taxes were owed on the Condo occurred *after Mr. Ostayan's purchase* of the Condo. Ex. 3 to Ostayan Decl., ECF No. 135-9 (Notice of Secured Property Taxes, providing that no taxes had been paid on the Condo in each of the years 2018–23). Given Mr. Ostayan's admission that he has not paid property taxes "due to the pending forfeiture action," the only discernible explanation for Mr. Ostayan's failure to pay taxes upon assuming ownership is that he was aware of the pending forfeiture all along. Ostayan Decl. ¶ 11.

Allowing Mr. Ostayan to file a claim at this late date would also prejudice the government, which reports that that settlement of Mr. Irani's outstanding claim is imminent. Gov't Reply at 26. As the Second Circuit has explained, Supplemental Rule G serves the "critical purpose" of "forc[ing] claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested

9

parties and resolve the dispute without delay." *$417,143.48*, 682 Fed. App'x at 19 (quotations and citations omitted). "That purpose would be thwarted if claimants came to view the strictures of Rule G as mere suggestions rather than as rules that will presumptively be enforced." *Id*. Permitting a new claim on the eve of settlement would force the government to continue litigating this action, which has already drawn out for nearly a decade.

Finally, Mr. Ostayan does not have a meritorious defense to the action. Although Mr. Ostayan claims to assert an "innocent owner" defense under 18 U.S.C. § 983(d)(3)(A), he cannot claim that he "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(ii). Once recorded, a *lis pendens* "acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the *lis pendens* is expunged." *Amalgamated Bank v. Superior Court*, 149 Cal.App.4th 1003, 1011 (2007). Regardless of whether Mr. Ostayan may expunge the *lis pendens* under California law, its existence on the property record was more than sufficient to alert Mr. Ostayan to the existence of this action *in rem* over the Condo, and therefore that the Condo was "subject to forfeiture," as required by 18 U.S.C. § 983(d)(3)(A)(ii).

## II. Motion to Expunge

In addition to his verified claim, Mr. Ostayan has also filed a motion to expunge the government's *lis pendens* pursuant to California law. Having struck the claim as untimely, I conclude that Mr. Ostayan lacks statutory standing to bring the motion.

"In order to contest a governmental forfeiture action," a claimant must establish both statutory standing and "standing Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526

10

(2d Cir. 1999). Statutory standing is established by filing a verified claim within the time provided by the Supplemental rules unless the court grants an extension. *Cambio Exacto*, 166 F.3d at 526. A putative claimant who lacks standing is "simply a stranger to the litigation" and "lacks the right to bring any motion, regardless of the basis." *Vazquez-Alvarez,* 760 F.3d at 196–97. Accordingly, the Second Circuit has confirmed that a district court need not reach the merits of a motion filed by a claimant who lacks statutory standing in an *in rem* civil forfeiture proceeding. *Id.* at 197 ("Establishing standing in the context of a forfeiture action before considering the merits of a motion to dismiss simply makes sense[.]").

Here, I have struck Mr. Ostayan's untimely claim and answer. Having failed to comply with Supplemental Rules (or obtain an extension from the court), he lacks statutory standing to bring a substantive motion in this action. *See Cambio Exacto*, 166 F.3d at 526 ("[Claimant] . . . did not file a timely claim and therefore lacks statutory standing."). Accordingly, I deny the motion to expunge for lack of standing.

## CONCLUSION

For the foregoing reasons, the government's motion to strike Mr. Ostayan's late-filed claim, ECF No. 123, and answer, ECF No. 122, is granted. The motion to expunge the *lis pendens*, ECF No. 135, is denied for lack of standing.

SO ORDERED.

/s/ _____
Allyne R. Ross
United States District Judge

Dated:     May 5, 2025
           Brooklyn, New York

11